# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANDREW PERRONG, individually and on behalf of all others similarly situated, | : : Civil File No. |
| Plaintiff, | : : |
| v. | : **COMPLAINT – CLASS ACTION** : |
| JOHN DOE CORPORATION d/b/a NATIONAL ADVOCATES and GACOVINO, LAKE & ASSOCIATES, P.C., | : : : : |
| Defendants. | : |

**Preliminary Statement**

1. As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

2. The Plaintiff Andrew Perrong alleges that, on behalf of Gacovino, Lake & Associates, P.C. ("Lake"), John Doe Corporation d/b/a National Advocates ("National Advocates") made unsolicited telemarketing calls to Mr. Perrong and others without their prior express consent.

3. Because these calls were transmitted using technology capable of generating thousands of similar calls per day, he sues on behalf of a proposed nationwide class of other persons who received similar calls.

4. A class action is the best means of obtaining redress for the Defendants' illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

**Parties**

5. Plaintiff Andrew Perrong is an individual residing in Pennsylvania in this District.

6. Defendant Gacovino, Lake & Associates, P.C. is a New York professional corporation.

7. Defendant John Doe Corporation is a company hired by Lake to make telemarketing calls in order to generate new clients for their law firm.

**Jurisdiction & Venue**

8. The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

9. The Court has personal jurisdiction over Defendants because they directed their conduct into this District. National Advocates made the calls at issue into this District. This Court also has jurisdiction over Lake because National Advocates, at their instruction, sent out their retainer agreements into this District and made calls into this District.

10. Venue is proper under 28 U.S.C. § 1391(b) because the calls at issue were made into this District.

## TCPA Background

11. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

<u>The National Do Not Call Registry</u>

12. § 227(c) of the TCPA requires the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

13. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

14. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

15. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are made. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

## Factual Allegations

16. Lake is a personal injury law firm.

17. National Advocates is a marketing company that generates leads for Defendant Lake.

18. To generate leads, National Advocates makes unsolicited telemarketing calls to consumers who have never had a relationship with National Advocates or Lake and who have never consented to receive their calls.

19. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

20. Plaintiff's telephone number, (215)-322-XXXX, is a residential number registered on the National Do Not Call Registry.

21. It has been registered for more than 30 days prior to the calls made to Mr. Perrong.

22. It is not associated with a business and is used by Mr. Perrong only.

23. Plaintiff received three telemarketing calls from National Advocates on September 7, 2021.

24. All of the calls same from the same Caller ID, (561) 766-4172.

25. NoMoRobo, who won the FTC's competition for tracking robocalls, as a "robocaller", has reported that Caller ID as a "robocaller". *See* https://www.nomorobo.com/lookup/561-766-4172 (Last Visited September 15, 2021).

26. In fact, the website has identified calls from that number specifically as a "personal injury robocall". *Id.*

27. During the first call, an individual came on the line and asked the Plaintiff if he was diagnosed with Non-Hodgkin's lymphoma as a result of using Roundup weed killer. Shortly thereafter, the line disconnected.

28. On the second call, Mr. Perrong engaged the telemarketer to learn their identity.

29. During this second call, Mr. Perrong was solicited to become a plaintiff in connection with products liability litigation with respect to Roundup weed killer.

30. Lake litigates such cases.

31. The call ended with Mr. Perrong being sent a Lake retainer agreement via DocuSign.

32. Mr. Perrong declined to sign the DocuSign document and stated, "ILLEGAL TELEMARKETING CALL. DO NOT CALL ME AGAIN. PUT ME ON YOUR DO NOT CALL LIST. SEND ME A COPY OF YOUR DO NOT CALL POLICY."

33. Despite this clear indication not to be contacted, Mr. Perrong received a third call from National Advocates seeking to solicit him for a Roundup claim.

34. During the call, Mr. Perrong reiterated his requests not to be called but the agent continued to insist that Mr. Perrong sign the retainer agreement.

35. The agent also admitted that she was using a "computer to call [him]" and that the name of the system was eyeBeam.

36. The calls were not necessitated by an emergency.

37. Plaintiff's privacy has been violated by the above-described telemarketing calls.

38. Plaintiff and all members of the Class, defined below, have been harmed by the acts of Defendants because their privacy has been violated, they were annoyed and harassed,

and, in some instances, they were charged for incoming calls. In addition, the calls occupied their telephone lines, rendering them unavailable for legitimate communication.

## Lake's Liability for National Advocate's Conduct

39. For more than twenty-five years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

40. In fact, the Federal Communication Commission has instructed that sellers such as Lake may not avoid liability by outsourcing telemarketing to third parties, such as National Advocates:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

41. On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously

6

liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers."[1]

42. Lake is liable for National Advocates' conduct because they control the manner and means of its telemarketing methods by:

    a)    acquiescing to their business mode of using a call center;

    b)    instructing them on the geographic regions they can make calls into;

    c)    providing qualifications for potential clients to be sent; and

    d)    allowing National Advocates to engage clients using their retainer agreement.

43. Lake knew (or reasonably should have known) that National Advocates was violating the TCPA on its behalf and failed to take effective steps within its power to force the telemarketer to cease that conduct.

44. Any reasonable seller that accepts telemarketing call leads from lead generators would, and indeed must, investigate to ensure that those calls were made in compliance with TCPA rules and regulations.

45. Indeed, Lake has received complaints before about calling numbers on the National Do Not Call Registry:

> I have never done business with them and do not know them. I am on the 'do not call' list. yet, they call me almost every day, sometimes numerous times a day. If I answer, no one ever says anything no matter how long I listen or what I say. Last night, I called them, followed prompts, spoke to a woman and told her the above. I told her to stop calling me and if they had to reach me they should send a letter. They called me again today and said nothing when I answered. I told them if they called again, I would file a complaint and

---

[1] *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd 6574, 6574 (¶ 1) (2013) ("May 2013 FCC Ruling").

other action(s) as needed to stop these almost daily harassing phone calls. I want them to immediately and permanently stop contacting and harassing me.

*See* https://www.bbb.org/us/ny/sayville/profile/lawyers/gacovino-lake-associates-pc-0121-150922/complaints#0 (Last Visited September 15, 2021).

46. Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46). Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

### Class Action Allegations

47. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

48. Plaintiff brings this action on behalf of himself and the following class (the "Class") pursuant to Federal Rule of Civil Procedure 23.

49. Plaintiff proposes the following Class definitions, subject to amendment as appropriate:

> **National Do Not Call Registry Class**: All persons in the United States whose, (1) residential telephone numbers were on the National Do Not Call Registry for at least 30 days, (2) but received more than one telephone solicitation from or on behalf of National Advocates that did, or could have, resulted in the retention of a client for Lake, (3) within a 12-month period, (4) from four years prior the filing of the Complaint through trial.

Excluded from the Class are counsel, the Defendants, and any entities in which the Defendants have a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

50. The Plaintiff is a member of and will fairly and adequately represent and protect the interests of the Class as he has no interests that conflict with any of the Class members.

51. Plaintiff and all members of the Class have been harmed by the acts of the Defendants, including, but not limited to, the invasion of their privacy.

52. The Class as defined above are identifiable through dialer records, other phone records, and phone number databases.

53. Plaintiff does not know the exact number of members in the Class, but Plaintiff reasonably believes Class members number, at minimum, in the hundreds in the Class.

54. The joinder of all class members is impracticable due to the size and relatively modest value of each individual claim.

55. Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

56. There are well defined, nearly identical, questions of law and fact affecting all parties. The questions of law and fact, referred to above, involving the claims predominate over questions which may affect individual class members because of the uniformity of the telemarketing conduct.

57. There are numerous questions of law and fact common to Plaintiff and to the proposed Class, including but not limited to the following:

    (a) Whether Lake is vicariously liable for the acts of National Advocates;

(b) whether multiple telemarketing calls were made promoting Defendants' goods or services to members of the National Do Not Call Registry Class;

(c) whether the telemarketing calls at issue were made to Plaintiff and members of the Class without first obtaining prior express written consent to make the calls;

(d) whether Defendants' conduct constitutes a violation of the TCPA; and

(e) whether members of the Class are entitled to treble damages based on the willfulness of Defendants' conduct.

58. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions, and especially TCPA class actions. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the other members of the Class and have the financial resources to do so.

59. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of Class members, which will be ascertainable from records maintained by Defendants and/or their agents.

60. The likelihood that individual members of the Class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

**FIRST CAUSE OF ACTION**
**Violation of the Telephone Consumer Protection Act**
**(47 U.S.C. 227, et seq. and 47 C.F.R. §§ 64.1200(c))**
**on behalf of the National Do Not Call Registry Class**

61. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

62. Defendants violated the TCPA and the Regulations by making, or having their agent make, two or more telemarketing calls within a 12-month period on Defendants' behalf to Plaintiff and the members of the National Do Not Call Registry Class while those persons' phone numbers were registered on the National Do Not Call Registry.

63. As a result of Defendants' violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and National Do Not Call Registry Class members are entitled to an award of up to $500 in statutory damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(c)(5).

64. Plaintiff and Class Members are entitled to an award of treble damages if their actions are found to have been knowing or willful.

65. Plaintiff and National Do Not Call Registry Class members are also entitled to and do seek injunctive relief prohibiting the Defendants from advertising their goods or services, except for emergency purposes, to any number on the National Do Not Call Registry in the future.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

A. Injunctive relief prohibiting Defendants from making telephone calls advertising their goods or services, except for emergency purposes, to any number on the National Do Not Call Registry in the future;

B. As a result of Defendants' negligent, willful and/or knowing violations of 47 C.F.R. § 64.1200(c), Plaintiff seeks for himself and each member of the Class up to treble damages, as provided by statute, of up to $1,500 for each and every violation of the TCPA;

C. An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing Class the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class;

D. Such other relief as the Court deems just and proper.

## JURY DEMAND

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

Dated: September 21, 2021

Respectfully submitted,

*/s/ Andrew M. Carroll*
Andrew M. Carroll
Carroll Law Office, P.C.
427 N Packard St.
Hammonton, NJ 08037
Telephone: (856) 426-9815
Fax: (856) 997-1031
andrewcarrollesq@gmail.com

KAUFMAN PA
Avi R. Kaufman
400 Northwest 26th Street
Miami, Florida 33127
305-469-5881
kaufman@kaufmanpa.com

*Attorneys for Plaintiff and proposed class*